IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Cr. No. 23-1832-JCH |
| ) | |
| vs. ) | |
| ) | |
| **ANTHONY LUTZ**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States, by and through its undersigned attorney, hereby responds to the defendant's sentencing memorandum (Doc. 73). The United States respectfully recommends that the Court accept the parties' plea agreement and impose a sentence of five years of probation and a fine of $30,000. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

FACTUAL BACKGROUND

The United States agrees with the facts set forth in the Presentence Investigation Report (PSR) (Doc. 69), to which neither party has objected. In a nutshell, as set forth in the PSR and a variety of pretrial pleadings, between 2019 and 2023, the defendant, who is not a federally licensed firearms dealer, built and sold dozens of guns for profit.

Law enforcement was unaware of the defendant's gun business until October 2022, when an Anderson Manufacturing AM-15 556 caliber rifle was seized by Mexican police at a crime scene in Zacatecas, Mexico. The rifle was recovered alongside two other rifles, a pistol, dozens of magazines, over 1,000 rounds of ammunition, and an attachment for a grenade launcher. The Mexican authorities entered the serial number of the Anderson Manufacturing rifle into the Bureau

of Alcohol, Tobacco, Firearms and Explosives (ATF) firearms tracing system (also called the e-Trace system), which revealed the defendant originally purchased the weapon from Omni Arms in Albuquerque on October 24, 2019.  ATF then conducted additional research in the e-Trace system to determine if the defendant was the original purchaser on any other firearms that were later recovered from crime scenes.  They identified nine other weapons that fit this description.  Later, in 2024, they identified a tenth, and in 2025, they identified an eleventh—for a total of six firearms recovered from crime scenes in Albuquerque, and six recovered from crime scenes in Mexico.

This pattern of activity—twelve firearms recovered from crime scenes (including from locations in a different country), all with a relatively short "time to crime"[1]—raised alarm bells for ATF agents, as it was consistent with unlicensed dealing or firearms trafficking.  So, agents took a deeper dive into the defendant's firearm purchase history.  They canvassed several Albuquerque-area gun stores for purchase records in the defendant's name.  This research identified approximately 80 firearms (including approximately 62 receivers) that the defendant purchased between September 2019 and July 2023.

The purchase records[2] raised additional red flags.  For starters, the sheer volume of weapons was, based on agents' training and experience, inconsistent with someone amassing a personal collection of firearms.  The types of weapons also caused concern.  To illustrate:  In 2019 and 2020, the defendant purchased 29 of the *exact same* Anderson Manufacturing AM-15

---

[1] "Time to crime" is a term of art that ATF agents use to describe the time between the original purchase of a firearm and its subsequent recovery at a crime scene.  Generally speaking, the shorter a "time to crime" metric is, the more likely it is to be associated with trafficking or unlicensed dealing.

[2] The primary record of a firearm sale from a federal firearms licensee is the ATF Form 4473, which requires the purchaser to provide identifying information and make various certifications to the seller.  As relevant here, for each purchase, the defendant signed his name beneath a certification stating, "I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law" (or functionally equivalent language).

receiver (the same type that was recovered in Mexico). And in 2020, he purchased 22 of the *exact same* Spikes Tactical ST-15 receiver. No one who is interested in merely collecting, building, and trying out guns as a hobby—as the defendant later claimed—would plausibly acquire so many of the exact same type of receiver.

In July 2023, ATF agents met with the defendant for a non-custodial interview at his house. In relevant part, the defendant, who is a former Marine, admitted that, in the past, he had personally built receivers into functioning firearms before selling them to others. The defendant claimed that he was a firearms "enthusiast" and stated that he would take firearms to the range to figure out what he liked about one firearm as compared to other firearms. He claimed that he had been "trading" and selling firearms throughout his entire adult life.

The defendant also admitted that he would sell multiple firearms at once, usually to different purchasers. He stated that his timeframe to sell firearms depended on how long it took him to make them the way he liked them, and he would try them out with different parts. The defendant claimed that the shortest timeframe where he would purchase a firearm and then sell it could be "a couple of days." He also stated that he would put a lot of money into buying his next gun to "try it out." The defendant further admitted that he arranged to sell and trade firearms through the New Mexico-based website www.JasonsGuns.com. He said the receivers he used for his builds generally cost him around $100. When asked how much he made from selling the fully built weapons, he said that was between him and the buyers. He did not deny making a profit.

In August 2023, ATF agents executed a search warrant at the defendant's home. They found none of the roughly 80 firearms previously mentioned, corroborating the defendant's admission that these firearms had long since been sold. But they did find additional empty pistol boxes, an empty rifle box, and an array of tools and equipment that were consistent with the

defendant building firearms. The agents also seized numerous electronic devices that demonstrate the defendant's long-term involvement in firearms sales. For instance, one of his devices contained extensive Internet browser history and emails involving gun sales through the website www.JasonsGuns.com,3 and an external hard drive contained hundreds of photographs of firearms, apparently staged for advertisements, taken between 2019 and 2020. At the time of the search, the defendant received *Miranda* warnings and told agents, "I don't sell any more guns . . . I stopped."

In December 2023, the defendant was indicted on a single count of dealing firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D). The defendant pled guilty to that charge via a Rule 11(c)(1)(B) plea agreement on September 10, 2025 (Doc. 67), a little less than two weeks before trial was scheduled to begin.

Sentencing is scheduled for December 8, 2025.

## SENTENCING RECOMMENDATION

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). Those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C § 3553(a)(2). In determining a sentence, the Court must consider (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the Guidelines, Guidelines range, and any pertinent

---

[3] Agents obtained a search warrant for additional records from this website, and the return included dozens of firearms ads that the defendant posted or replied to during the relevant timeframe.

Guidelines policy statement; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a)(1), (3)–(7).

I.   **Applicable Guideline Range**

The PSR assigns the defendant a total offense level of 15.   PSR ¶ 51.   His criminal history category is I.   *Id.* ¶ 56.   This results in a guideline range of 18 to 24 months of imprisonment.   *Id.* ¶ 82.   The guideline fine range is $7,500 to $75,000.   *Id.* ¶ 91.

II.   **Nature and Circumstances of the Offense**

Unlicensed dealing in firearms takes many forms.   The form it took in this case—with 12 (and counting) of the defendant's firearms recovered from crime scenes both in New Mexico and in the Republic of Mexico—highlights one of the primary dangers of this conduct: It is much easier for unlicensed sales than licensed ones to put firearms in the wrong hands.   And once those firearms enter the illegal stream of commerce, they are gone—unless and until they are recovered from crime scenes.

The defendant's sentencing memorandum seems to downplay this conduct.   The defendant was in the miliary so *of course* he began building guns to his "demanding specifications" in his quest for "the perfect firearm,"[4] and when he didn't like those guns, *of course* he ended up selling them.   The repetitive acquisition and sale of these firearms for profit was merely an incidental byproduct of these predestined decisions.   The reality is that most gun owners don't behave in this way.   Most lawful gun owners who are not engaged in the business of unlicensed dealing see *zero*

---

[4] Based on extensive conversations with ATF agents in preparation for trial, it is highly unlikely that a knowledgeable firearms enthusiast would endeavor to build "the perfect firearm" from the Anderson Manufacturing and Spikes Tactical receivers the defendant was so fond of purchasing.   These are generally considered to be lower to mid-range platforms—the Chevrolets of the gun manufacturing world, not the Cadillacs.

of their firearms later recovered from crime scenes, whether at home or abroad. Having 12 of them get recovered in that fashion is remarkable and suggests a pattern of sales that goes far beyond the incidental sales the defendant describes. The defendant losing his Second Amendment right to bear arms and facing a significant term of probation and a fine are the minimum requirements of a fair and just sentence for such conduct.

### III.     History and Characteristics of the Defendant

The United States agrees with many of the defendant's arguments concerning his positive personal attributes that weigh in favor of the below-guidelines sentence proposed by the parties' plea agreement. He served in the military, has a strong track record of employment, appears to be an engaged father, and has complied with conditions of pretrial release for around two years. These positive characteristics all put downward pressure on the guideline range. His criminal history is relatively minor, although the allegations of domestic violence (albeit unproven and ultimately dismissed) are concerning. Of course, the lack of felony convictions is also why the defendant was able to acquire the firearms at issue in the first place.

### CONCLUSION

For the reasons discussed above, the United States respectfully recommends that the Court accept the parties' plea agreement and impose a sentence of five years of probation and a fine of $30,000.

Respectfully submitted,

RYAN ELLISON
Acting United States Attorney

*Electronically submitted on 12/3/2025*
**Louis C. Mattei**
**Brittany DuChaussee**
Assistant United States Attorneys
201 3rd St. NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel to be served by electronic means.

*Electronically submitted on 12/3/2025*
**Louis C. Mattei**
Assistant United States Attorney